UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PATRICIA A. REEVES,<br><br>                                    Reeves,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br><br>                                    Defendant. | Case No. 2:13-cv-00139-GMN-PAL<br><br>**REPORT OF FINDINGS AND<br>RECOMMENDATION**<br><br>(Mtn to Reverse – Dkt. #14)<br>(Cross Mtn SJ – Dkt. #20) |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Patricia A. Reeves's claim for disability benefits under Titles II and XVI of the Social Security Act (the "Act").

**BACKGROUND**

On November 3, 2009, Reeves filed applications for disability insurance benefits and Supplemental Security Income ("SSI"), alleging she became disabled on December 26, 2006. AR[1] 116-124. The Social Security Administration ("SSA") denied Reeves's applications initially and on reconsideration. AR 65-69, 72-77. A hearing before an administrative law judge ("ALJ") was held on September 21, 2011. AR 40-57. In a decision dated October 5, 2011, the ALJ found Reeves was not disabled. AR 26-39. Reeves requested review of the ALJ's decision by the Appeals Council, and the ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on October 31, 2012. AR 5-8.

On January 25, 2013, Reeves filed an Application to Proceed in Forma Pauperis (Dkt. #1) and submitted a Complaint (Dkt. #5) in federal court, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Commissioner filed her Answer

---

[1] AR refers to the Administrative Record, which was delivered to the undersigned upon the Commissioner's filing of her Answer (Dkt. #11) on May 7, 2013.

1

(Dkt. #11) on May 7, 2013.  Reeves filed a Motion for Remand (Dkt. #14), and the Commissioner filed a Response and Cross-Motion for Summary Judgment (Dkt. #20) on September 20, 2013.  The court has considered the Motion, the Response and Cross-Motion, and Reeves's Reply (Dkt. #22) filed October 10, 2013.

## DISCUSSION

**I.     Judicial Review of Disability Determination.**

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  The statute provides that after the Commissioner of Social Security has held a hearing and rendered a final decision, a disability claimant may seek review of the Commissioner's decision by filing a civil lawsuit in federal district court in the judicial district where the disability claimant lives.  *See* 42 U.S.C. § 405(g).  That statute also provides that the district court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The Ninth Circuit reviews a decision of a district court affirming, modifying, or reversing a decision of the Commissioner de novo.  *Batson v. Commissioner*, 359 F.3d, 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *see also Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1052 (9th Cir. 2006); *see also Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart,* 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

///

1  conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater,*
2  80 F.3d 1273, 1279 (9th Cir. 1996).

3  Under the substantial evidence test, the Commissioner's findings must be upheld if
4  supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the
5  evidence will support more than one rational interpretation, the court must defer to the
6  Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also*
7  *Flaten v. Sec'y of Health and Human Serv.,* 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently,
8  the issue before the court is not whether the Commissioner could reasonably have reached a
9  different conclusion, but whether the final decision is supported by substantial evidence.

10  It is incumbent on the ALJ to make specific findings so that the court does not speculate
11  as to the basis of the findings when determining if the Commissioner's decision is supported by
12  substantial evidence. Mere cursory findings of fact without explicit statements about what
13  portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654
14  F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical
15  as feasible, and where appropriate, should include a statement of subordinate factual foundations
16  on which the ultimate factual conclusions are based." *Id.*

17  **II.** **Disability Evaluation Process**

18  The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179,
19  182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must
20  demonstrate an "inability to engage in any substantial gainful activity by reason of any medically
21  determinable physical or mental impairment which can be expected . . . to last for a continuous
22  period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must provide
23  "specific medical evidence" to support his or her claim of disability. If a claimant establishes an
24  inability to perform his or her prior work, the burden shifts to the Commissioner to show that the
25  claimant can perform other substantial gainful work that exists in the national economy. *Batson*,
26  157 F.3d at 721.

27  The ALJ follows a five-step sequential evaluation process in determining whether an
28  individual is disabled. *See* 20 C.F.R. § 416.920; *see* also *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). If at any step the ALJ makes a finding of disability or non-disability, no further evaluation is required. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(b) and 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. *See* 20 C.F.R. §§ 404.1572(a)-(b) and 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically-determinable impairment that is severe or a combination of impairments that significantly limits him or her from performing basic work activities. *See* C.F.R. §§ 404.1520(c) and 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *See* C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically-determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically-determinable impairment or combination of impairments, then the analysis proceeds to the third step.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.826. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made. *See* 20 C.F.R. §§ 404.1520(h) and

---

[2] SSRs are the SSA's official interpretations of the Act and its regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* also 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Act and regulations. *See Bray*, 554 F. 3d at 1223 (finding ALJ erred in disregarding SSR 85-41).

416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e) and 416.920(e). RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence such as symptoms and the extent to which they can be reasonably be accepted as consistent with the objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). *See* 20 C.F.R. §§ 404.1520(f) and 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and to perform it as SGA. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 419.960(b), and 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

Step five requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g) and 416.920(g). If he or she can do other work, then a finding of not disabled is made. Although the

1  individual generally continues to have the burden of proving disability at this step, a limited
2  burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is
3  responsible for providing evidence that demonstrates that other work exists in significant
4  numbers in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

**III.     Factual Background.**

   **A.     Testimony at Administrative Hearing.**

Reeves appeared with her representative for an administrative hearing before ALJ Norman Bennett in Las Vegas, Nevada, on September 21, 2011.  AR 42-57.  She testified that she was born November 28, 1955, and she was fifty-five years old at the time of the hearing.  AR 44.  She was 5'7" and weighed 173 pounds.  *Id.*  She was married but separated.  *Id.*  She did not have a valid driver's license because her daughter had used the license without Reeves's knowledge, and the license was taken away as a result.  *Id.*  She did not drive.  *Id.*  She graduated high school.  AR 45.

She last worked at Mission Linen at River Oaks Hospital in Mississippi in 2006.  *Id.*  She testified that prior to Mission Linen, she had worked as a housekeeper since 1974 at various places, including hospitals, hotels.  *Id.*  She also worked in fast food restaurants.  *Id.*  She testified she babysat for her niece's children in 2009 and 2010, averaging $12,000 income per year.  AR 46.  She did not work at all in 2011.  *Id.*  Because Reeves had engaged in SGA during this time, her attorney requested a closed period of disability from January 1, 2007, through December 31, 2008, at the administrative hearing.  *Id.*  The ALJ explained closed period disability benefits to Reeves and indicated he would consider whether she qualified for disability benefits in 2007 and 2008 as her counsel requested.  AR 47-48.

Reeves testified that in 2007, she could not lift anything, and she went to the doctor for medication to treat pain in her right ankle and lower back.  AR 48.  The pain in her right ankle and back began when Reeves fell off a porch while she was working.  AR 48, 49.  She did not get worker's compensation because she was at home when the injury occurred.  *Id.*  The fall broke her ankle in two places, and Reeves had surgery to repair her ankle on December 26, 2006.  AR 48.  After surgery, Reeves was in a wheelchair for between three and five months, and she

was prescribed narcotic pain medication, which made her drowsy. AR 52. It took her between three and five months to recover from her surgery. AR 53.

Since the surgery, her ankle hurt and became swollen. AR 49. She could only walk ten or twelve blocks before her ankle hurt, and she needed rest. *Id.* She saw a doctor beginning in 2010 for back pain. *Id.* She testified that her back hurt every day, especially when bending. AR 50. She had to stop working as a housekeeper because of the bending and stooping, and because she could not be on her feet for eight or more hours per day. AR 50, 54.

She testified that she has arthritis through her back, shoulders, and legs. AR 50. She took narcotic pain medication to control the arthritis pain, and although it did not eliminate the pain, she continued to take it because it reduced the pain a bit. *Id.* She suffered from trouble breathing as a result of her medication. AR 53. Reeves testified she had not been treated for any kind of mental disorder. AR 52. She tried to return to housekeeping after she healed from right ankle surgery, and did work a couple of days, but could not handle the work because she could not bend or be on her feet for at least eight hours a day. AR 53-54. This is why she began babysitting in 2009. AR 54.

The vocational expert, Dr. Robin Generaux, testified that Reeves's PRW was as a housekeeper and a childcare worker, both of which are classified as medium work by the *Dictionary of Occupational Titles*. AR 54-55. The VE testified that an individual who could lift twenty pounds occasionally and ten pounds frequently and could occasionally do postural maneuvers, including stooping, bending, kneeling, crouching, or crawling on an occasional basis could not perform any of Reeves's PRW. AR 55. The VE testified that there are jobs that such a person could do at the light exertional level, including hand packager, cashier, and ticket taker. *Id.* The VE also testified that if the hypothetical person could not bend or stoop more than once or twice per shift, he or she would not be able to work as a cashier, but he or she could perform as a hand packager or ticket taker. AR 55-56.

**B.   Reeves's Medical Records.**

There are very few records in the AR from the relevant period—i.e., January 1, 2007, through December 31, 2008. In fact, the only records from that time frame are three

7

appointments where Reeves was seen at UMC Quick Care in February, April, and December 2008 to refill pain medication for her back. Her back pain was treated conservatively, with medication and heat. AR 197.

A January 31, 2009, x-ray of Reeves's lumbosacral spine showed diffuse spondylosis,[3] facet arthropathy,[4] and mild disc narrowing at L4-5. AR 182. An x-ray of Reeves's ankle from the same date showed post-operative changes from a previous fracture but was otherwise normal. AR 183. There was no soft tissue swelling. *Id.* An x-ray of Reeves's cervical spine on March 22, 2009, showed mild to moderate degenerative changes at C6-7 and non-specific loss of cervical lordosis.[5] AR 194. An x-ray of Reeves's lumbar spine was normal on August 11, 2010. AR 257.

Dr. N. Shibuya, M.D., a state agency physician, completed a physical RFC assessment of Reeves on March 13, 2010. Dr. Shibuya found that Reeves could occasionally lift twenty pounds, frequently lift ten pounds; stand and/or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. AR 230. Reeves could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. AR 231. Reeves could occasionally balance, stoop, kneel, crouch, and crawl. *Id.* Reeves should avoid concentrated exposure to workplace hazards. AR 233. Dr. Shibuya determined Reeves had the RFC for light work with postural, environmental, and mechanical hazard restrictions. AR 236. In addition, Dr. Shibuya observed that Reeves might not be fully credible. AR 234. Although Reeves alleged disabling back and right ankle pain, Dr. Shibuya found that the medical records revealed adequate pain control. *Id.* Dr. Shibuya also observed that Reeves's examinations showed a normal back and extremities with normal neurologic function. *Id.* Dr. Shibuya found Reeves's allegation of disability was

---

[3] Spondylosis describes spinal degeneration accompanied by pain. *See* www.spine-health.com (last visited July 31, 2014).
[4] Degeneration of the facet joint, the joint structures that connect the spinal vertebrae to one another. *See* www.pain-medicine.med.nyu.edu (last visited July 31, 2014).
[5] Inward curvature of the spine at the neck. Some lordosis in the spine at the neck and low back is normal. *See* www.medterms.com/script/main/art.asp?articlekey=4198 (last visited July 29, 2014).

8

1   not supported. *Id.* In addition, a case analysis completed on March 10, 2010, by the state agency
2   noted that Reeves's allegations of pain were only "partially credible." AR 223.
3         In a disability report dated November 3, 2009, Reeves reported that her injuries did not
4   cause her to work fewer hours, change her job duties, or make any job-related changes. AR 132.
5   She stated that she stopped working in April 2008 because her temporary job assignment ended.
6   *Id.* Reeves wrote that she had seen Dr. Calderon since November 2008. AR 134. However, all
7   of Dr. Calderon's records in the AR are from June 2009 and later. AR 222. On April 1, 2010,
8   May 3, 2010, November 1, 2010, and September 20, 2011, Dr. Calderon wrote letters stating that
9   Reeves was disabled due to hypertension, chronic back pain, neck pain, hand pain, and ankle
10  pain. AR 264-67.

11  **III.    The ALJ's Decision.**

12        The ALJ found Reeves met the insured status requirements of the Act through December
13  31, 2012. AR 31. At step one, the ALJ found Reeves engaged in SGA between January 2009
14  and December 2010. *Id.* Reeves testified that she worked as a babysitter for her niece's children
15  during this time. *Id.* Accordingly, she requested a closed period of disability from January 1,
16  2007, through December 31, 2008, and that was the timeframe the ALJ considered in rendering
17  his decision. *Id.*
18        At step two, the ALJ found Reeves had the severe impairment of low back pain/lumbago.
19  *Id.* He also considered Reeves's non-severe impairments of hypertension, right ankle pain, and
20  mild obesity. *Id.* He found the record was limited with respect to complaints about these
21  impairments, and there were no complaints at all during the relevant period. *Id.* Therefore, he
22  found these impairments were non-severe because they did not cause more than a minimal effect
23  on Reeves's ability to perform basic work activities. *Id.*
24        At step three, the ALJ found Reeves did not have an impairment or combination of
25  impairments that met or medically-equaled the severity of any condition listed in 20 C.F.R. Part
26  404, Subpart P, Appendix 1. AR 32.
27        After considering the entire record, the ALJ determined that Reeves had the RFC to
28  perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she was

limited to occasional postural limitations. *Id.* Reeves testified she injured her back and broke her right ankle falling off a porch in December 2006. *Id.* She had surgery on her ankle, but she testified that it still swelled and hurt, and her back hurt every day. *Id.* She testified that she could only lift twenty pounds, walk ten to twelve blocks, and had difficulty bending. *Id.* She testified that pain medication helped reduce her pain. *Id.*

The ALJ found that Reeves's medically-determinable impairments could reasonably be expected to cause some of her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC finding. *Id.*

The first and only complaint of back pain in the record during the relevant period was from April 2008—sixteen months after Reeves was injured falling off the porch. *Id.* There was no evidence of any complaints of right ankle pain during the relevant period. *Id.* X-rays taken in January 2009 showed diffuse spondylosis, mild facet arthropathy, and mild disc narrowing at L4-L5 as well as post-operative changes from a previous surgery of the right ankle. *Id.* No significant soft tissue swelling was noted. *Id.*

Reeves complained about low back pain and low ankle pain outside of the relevant period. *Id.* The ALJ observed, however, that treatment was conservative, limited to monthly doctor visits for medication refills. *Id.* Physical and neurological examinations were all unremarkable and normal, and Reeves reported her pain was relieved by medication. AR 33.

The state Disability Determination Service ("DDS") determined Reeves was capable of lifting and/or carrying twenty pounds occasionally, ten pounds frequently; standing, walking, and/or sitting six hours in an eight-hour workday, with occasional postural limitations; never climbing ladders, ropes, or scaffolds; and should avoid concentrated exposure to workplace hazards. *Id.* The ALJ afforded the DDS opinion great weight because it was supported by and consistent with the objective medical evidence, the lack of documented complaints and/or treatment during the relevant period, and the record as a whole. *Id.*

Dr. Benito Calderon, Reeves's treating physician at the time of the hearing, opined Reeves was disabled. *Id.* The ALJ noted that the determination of disability is reserved to the

1 Commissioner and did not afford Dr. Calderon's opinion on this issue controlling weight or
2 special significance pursuant to 20 C.F.R. 404.1527(e) and 416.927(e). *Id.* at n.1 (citing SSR 96-
3 5p). The ALJ nevertheless considered and evaluated the opinion. *Id.* He afforded Dr.
4 Calderon's opinion no appreciable weight, finding it was not supported by the objective medical
5 evidence, Dr. Calderon's own findings on physical examinations, all of which were
6 unremarkable, Reeves's course of treatment, or the record as a whole. *Id.* In addition, the ALJ
7 observed Dr. Calderon did not become Reeves's treating physician until June 2009. Thus, even
8 if the ALJ had accepted Dr. Calderon's opinion, the earliest it could relate back to was June
9 2009, which was outside the relevant period. *Id.*

10 At step four, the ALJ found Reeves was unable to perform any of her PRW. *Id.* The VE
11 testified that Reeves's PRW as a housekeeper and childcare provider were both medium
12 exertional work, and the exertional limitations of this work exceeded her RFC. *Id.*

13 The ALJ found Reeves was born November 28, 1955, and was fifty-five years old as of
14 the alleged disability onset date. *Id.* She was and remained an individual approaching advanced
15 age throughout the relevant period. *Id.* Reeves had a high school education and could speak
16 English. *Id.* Transferability of job skills was not material to the ALJ's determination of
17 disability because, pursuant to the Medical Vocational Rules, Reeves was "not disabled"
18 regardless of transferability of job skills. *Id.*

19 Because Reeves could not perform the full range of light work, the ALJ considered
20 Reeves's age, education, work experience, and RFC and found there were jobs that existed in
21 significant numbers in the national economy that Reeves could perform. AR 34. The VE
22 testified that representative jobs were hand packager (309,746 jobs nationally; 1,949 jobs in
23 Nevada), cashier (1,096,481 nationally; 12,110 in Nevada); and ticket taker (82,711 nationally;
24 1,578 in Nevada). The VE also testified that these numbers could be adjusted upward six percent
25 because the number of jobs was greater in January 2007 – December 2008 than at the time of the
26 administrative hearing. *Id.* The ALJ found the VE's testimony was consistent with the
27 information in the *Dictionary of Occupational Titles*. *Id.*
28 / / /

1    Accordingly, the ALJ found Reeves was not disabled between January 1, 2007, and
2 December 31, 2008. *Id.*

3 **IV.    The Parties' Positions.**

4    **A.    Reeves's Motion to Reverse and/or Remand (Dkt. #14).**

5    Reeves argues that the ALJ erred in finding Reeves engaged in SGA in 2009 and 2010.
6 She made $11,267.00 in 2009, and at that time, the SGA was $11,760.00 annually. SGA in 2010
7 was $12,000.00 annually, and Reeves made $12,731.00. Reeves acknowledges that she cannot
8 receive benefits for 2010. Reeves asserts her work in 2010 qualifies as a "trial work period"
9 under 20 C.F.R. § 404.1592 because she stopped working in 2011.

10    Second, Reeves asserts the ALJ erred determining Reeves's credibility because he did not
11 articulate legally sufficient reasons for discounting the severity of her symptoms. The ALJ erred
12 in finding the evidence failed to show complaints of pain during the relevant period because
13 Reeves complained of pain in her ankle in 2008 and 2009. AR 196-97, 204, 205, 216, 219. The
14 ALJ also erred in discounting Reeves's symptom testimony because her treatment was
15 conservative, her neurological examinations were unremarkable, and because her pain was
16 relieved by medication. Additionally, because Reeves is incapable of performing a job that
17 requires standing most of the day, she could not perform a full range of light work "and should
18 be relegated to sedentary work at best." Citing 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule
19 201.12 and 201.14, Reeves argues she "grids out" as disabled at the sedentary level at age fifty.
20 Therefore, the court should reverse for an award of benefits as of her alleged onset date until
21 2010, then again in 2011 after her "trial work period" ended.

22    **B.    The Commissioner's Cross-Motion for Summary Judgment and Opposition**
23    **(Dkt. #20).**

24    The Commissioner asserts that the ALJ found Reeves engaged in SGA in 2009 because
25 Reeves's attorney asked the ALJ to consider only a closed period of benefits between January 1,
26 2007, and December 31, 2008. Reeves did not raise the issue of SGA or dispute the dates of the
27 closed period when she retained her current counsel or when she requested Appeals Council
28

1  review. The Commissioner asserts Reeves cannot now challenge the ALJ's decision that she
2  engaged in SGA in 2009.

3  Even assuming the ALJ should have considered 2009, the Commissioner is afforded
4  discretion in determining whether a claimant has engaged in SGA, and the regulatory thresholds
5  cited by Reeves are only "earnings guidelines." *See* 20 C.F.R. 404.1574(b), 416.974(b). When a
6  claimant's earnings fall slightly short of the guidelines, the Commissioner can consider other
7  information, including a claimant being in control of her wages. Here, Reeves's 2009 annual
8  income was only forty-one dollars short of the guideline. Because Reeves was working as a
9  babysitter for a family member, she could have influenced the amount and timing of her
10 earnings. However, because Reeves requested a closed period of disability, the ALJ was not
11 required to decide that issue.

12 Additionally, the Commissioner asserts that Reeves's argument concerning reinstatement
13 of benefits after a trial work period is premature because Reeves has not been awarded any
14 benefits that could be reinstated. The trial work period only applies to individuals who have
15 already been adjudicated disabled and who have not worked more than nine months. Reeves has
16 not been found to be disabled, and she worked for more than nine months.

17 The Commissioner contends the ALJ properly evaluated Reeves's credibility by giving
18 specific, permissible reasons supported by substantial evidence in the record. First, he found she
19 was not credible because the evidence showed she received only conservative treatment, and
20 treatment and medication are relevant to credibility. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), (v)
21 and 414.1529(c)(3)(iv), (v). The ALJ found only one medical record documenting Reeves's
22 back pain during the relevant period, and no records concerning Reeves's ankle pain. Even
23 records outside of the relevant period showed only very conservative treatment of Reeves's
24 alleged back and ankle pain, consisting of monthly doctors' visits for medication refills. On
25 several occasions, Dr. Calderon noted that medication relieved Reeves's pain. Except for one
26 note in the earliest record, Dr. Calderon never recommended any treatment other than pain
27 medication. In fact, the entire time Reeves saw Dr. Calderon for her back and ankle pain, she
28 was working, which demonstrates her pain was not as limiting as she alleged. Evidence of

conservative treatment is sufficient to discount a claimant's testimony about the severity of an impairment.

In addition, the ALJ found Reeves's complaints about the severity of her back and ankle pain were not credible because they were inconsistent with the weight of the medical evidence in the record. Reeves's x-rays were largely normal and inconsistent with the debilitating pain reported by Reeves. In addition, Dr. Calderon's treatment notes do not indicate that Reeves suffered from debilitating back or ankle pain. Inconsistency between Reeves's statements and the medical evidence is a valid reason for discounting credibility.

Finally, the ALJ considered the statement of the state agency physician who reviewed the record and found Reeves could perform a range of light work with postural restrictions. Accordingly, the Commissioner requests the ALJ's decision be affirmed.

### C. Reeves' Reply (Dkt. #22).

Reeves replies that the Commissioner failed to properly evaluate her subjective complaints. She asserts that the Commissioner should not have discredited her testimony because of the conservative nature of her treatment or because her symptoms were inconsistent with the weight of the medical evidence. Reeves acknowledges the records during the relevant period are sparse, but the "surrounding facts" indicate she is credible because she reported the income she made babysitting for a family member to the IRS. Reeves does not address the closed period issue in her Reply.

### V. **Analysis and Findings.**

Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported by substantial evidence, and the ALJ did not commit legal error.

First, the ALJ properly considered only a closed period of disability. At the hearing, when the ALJ asked Reeves about her earnings in 2009 and 2010, he observed that "[w]e're going to have substantial gainful activity—have you asked for a closed period here or—," and Reeves's attorney responded, "Your honor, I've gone over this with Ms. Reeves, over and over and over again. I would suggest a closed period of seven and eight." AR 47. The ALJ accepted

that recommendation, indicating he would consider the case a closed period case and would consider whether she was entitled to disability benefits from January 1, 2007, through December 31, 2008. *Id.* The ALJ then explained to Reeves what a closed period of benefits was, stating essentially that she did not qualify for disability benefits because of her earnings in 2009 and 2010. AR 47-48.

It has long been the rule in American courts that litigants are bound by the conduct of their attorneys, absent egregious circumstances. Over two hundred and thirty years ago, the Supreme Court held that "each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *See Link v. Wabash R. Co.,* 370 U.S. 626, 634 (1962), *reh'g denied,* 371 U.S. 873 (1962) (citing *Smith v. Ayer,* 101 U.S. 320, 326 (1879)); *Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381, 1387 (9th Cir. 1988); *Bonilla v. Las Vegas Cigar Co.,* 61 F. Supp. 2d 1129, 1140 (D. Nev. 1999). Reeves has been represented by counsel from the law firm Shook & Stone at all phases of this disability proceeding, including before the ALJ, at the reconsideration level, and in her request for review to the Appeals Council. Her attorney specifically requested the ALJ consider a closed period of disability benefits, and the ALJ granted that request. Reeves did not challenge this decision in her request for reconsideration or in her request for review by the Appeals Council. Claiming the ALJ committed reversible error by granting the request of the same law firm that has represented Reeves throughout the administrative process and on judicial review borders on a violation of Rule 11 of the Federal Rules of Civil Procedure. Counsel has consistently taken the position that the Commissioner should consider this a closed period case, from January 1, 2007, to December 31, 2008, and may not claim otherwise on judicial review. The ALJ did not err in considering a closed period of disability benefits because that is what Reeves requested through her attorney.

The court also finds the ALJ properly assessed Reeves's credibility. The Ninth Circuit has consistently held that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982); *see also Allen v. Heckler,* 749 F.2d 577, 580 n.1 (9th Cir. 1985); *Magellenes,* 881 F.2d at 750.

However, the ALJ's credibility findings must be supported by specific, cogent reasons. *See Rahad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *Yuckert v. Bowen,* 841 F.2d 303, 307 (9th Cir. 1990). General findings are insufficient; rather, the ALJ must identify what testimony is credible and what evidence undermines the claimant's complaints. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.2d 915, 918 (9th Cir. 1993). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. *See Lester,* 81 F.3d at 834. In weighing a claimant's credibility, an ALJ may consider the claimant's reputation for truthfulness, inconsistencies between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *See Smolen*, 80 F.3d at 1284 (citations omitted). Furthermore, an ALJ's personal observation of a claimant a hearing may be considered in the overall evaluation of credibility. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); SSR 96-7p.

The court finds the ALJ gave clear and convincing reasons, supported by substantial evidence in the record for discrediting Reeves's statements concerning the degree of her impairments and limitations. He specifically identified which testimony he discredited and stated the evidence he relied on in making that determination. The ALJ observed that there was only one record from April 2008 when Reeves complained of back pain, sixteen months after her fall. At that visit, Reeves saw Dr. Taylor with complaints of chronic lower back pain that had been ongoing for a year. AR 197. Dr. Taylor prescribed a muscle relaxer and a pain reliever and recommended Reeves apply heat to the area twice per day. Id. The progress notes do not reflect Reeves mentioned right ankle pain at this visit. The ALJ found no records at all during the relevant period concerning Reeves's right ankle pain. The AR contains no other record that Reeves received any other medical treatment for her back and ankle during the relevant period.

The ALJ also reviewed the records outside the relevant period and found that Reeves's complaints of back pain and ankle pain were treated conservatively, with monthly doctor's visits for medication refills. Between June 2009 and February 2010, Reeves saw her treating physician, Dr. Calderon, on a monthly basis. AR 203-22. He usually noted Reeves's back pain,

and sometimes noted her right ankle pain. He prescribed Lortab and Oxycontin for pain. At several visits, Dr. Calderon noted the medication relieved Reeves's pain. AR 205, 210, 212, 214. Except for Reeves's first visit, Dr. Calderon never recommended any treatment other than pain medication. AR 222, 203-22. The Ninth Circuit has held that evidence of conservative treatment is sufficient to discount a claimant's testimony about the severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Because Reeves's injuries were only ever treated conservatively, the ALJ properly discredited Reeves's testimony on this basis. In addition, as the Commissioner points out, during the entire time Reeves saw Dr. Calderon, she was actually working, earning approximately $12,000.00 per year in 2009 and 2010. Despite Reeves's pain and use of pain medication, she could and did work, indicating her pain was not as limiting as she alleged. Furthermore, Reeves reported in November 2009 that her disability did not cause a reduction in hours, change in job duties, or any other job related change. AR 132. She wrote that the reason she had stopped working was because her temporary position had ended. *Id.*

The ALJ also discredited Reeves's symptom testimony, finding her complaints about the severity of her back and ankle pain were not consistent with the weight of the medical evidence in the record. As discussed above, the ALJ noted that the record only contained one complaint about back pain during the relevant period, and Reeves was only treated conservatively for her pain. He noted that Reeves's January 2009 x-rays showed only diffuse spondylosis, mild facet arthropathy, mild disc narrowing at L4-L5, of the lumbar spine; and post-operative changes of the right ankle, with no significant soft tissue swelling noted. A March 2009 x-ray of Reeves's cervical spine showed only mild to moderate degenerative changes at C6-7. AR 194. These images are inconsistent with Reeves's complaints of disabling pain. AR 48-50. The ALJ also noted that Dr. Calderon's examinations of Reeves were largely unremarkable as was a February 2010 neurological exam. AR 203-22, 203. Dr. Calderon's treatment notes also indicate Reeves's back pain was relieved by pain medication. AR 205, 210, 212, 214. Furthermore, Dr. Shibuya observed in March 2010 that Reeves may not be fully credible because the medical

records show that her pain was adequately controlled, and her examinations were normal. AR 234.

These inconsistencies were an appropriate ground for the ALJ to discount Reeves's credibility. *See Bray*, 554 F.3d at 1227. Although the ALJ cannot rely on objective evidence alone to reject a claimant's subjective pain complaints, it is one factor the ALJ may properly consider in his analysis. *See generally* SSR 96-7p; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ properly considered the objective evidence in discounting Reeves's symptom testimony. *See Osenbrock*, 240 F.3d at 1165-66 (ALJ properly discounted pain testimony where neurological and orthopedic exams were, for the most part, normal).

The ALJ also properly relied on the DDS physician's opinion that Reeves could perform light work with occasional postural limitations and avoidance of heights and workplace hazards. In *Stubbs-Danielson v. Astrue*, the Ninth Circuit found that in making a credibility determination, an ALJ's reliance on medical evidence, including medical opinions, is proper. 539 F.3d 1169, 1175 (9th Cir. 2008). The ALJ was entitled to consider the DDS physician's opinion when making a credibility determination.

The court finds the ALJ articulated specific, clear and convincing reasons, supported by substantial evidence in the record to discount Reeves's subjective complaints. The ALJ determined Reeves's symptoms were not credible because of the conservative nature of medical treatment she received for her severe impairments. The ALJ also considered the weight of the objective medical evidence—including the lack of medical evidence from the relevant period— and concluded that Reeves's symptoms were not wholly credible. The ALJ did not discredit Reeves's testimony soley because it was not corroborated by the objective medical evidence as Reeves suggests. The ALJ considered the nature of Reeves's treatment, the objective medical evidence, and the opinion of the DDS physician that was consistent with the record as a whole. The court must grant deference to the ALJ's credibility determination when it is supported by specific findings, as the ALJ's determination here was. *See Flaten*, 44 F.3d at 1453 (internal citation omitted). Where the ALJ's finding is supported by substantial evidence, as the ALJ's determination is here, the court "may not engage in second-guessing" the ALJ. *Tommasetti v.*

*Astrue,* 533 F.3d 1035, 1039 (9th Cir. 1995). The court finds the ALJ properly evaluated Reeves' credibility.

Additionally, Reeves argues that the ALJ erred in finding Reeves could perform light work, and she should be relegated to sedentary work because her "impairments preclude her from a job that requires standing up for most of the day." Motion at 10:9-10. She asserts no factual or legal argument to support her contention that the ALJ erred in determining Reeves' RFC. It appears that the crux of her argument is that accepting Reeves' subjective complaints as true, she could not perform a full range of light work. Further, if Reeves were limited to sedentary work, she would be disabled pursuant to Medical-Vocational Rules 201.12 and 201.14. The court has already determined the ALJ did not err in assessing Reeves' credibility. Reeves does not contest the ALJ's RFC determination for any other reason.

Likewise, Reeves' argument about a trial work period is similarly unavailing. She relies on 20 C.F.R. § 404.1592 to argue that a finding of disability between 2007 and 2009 indicates she would have been entitled to a trial work period in 2010. However, 20 C.F.R. § 404.1592 does not apply to Reeves. On its face, it only applies to individuals who have been adjudicated disabled. Reeves was not adjudicated disabled, and this regulation does not apply. Even if Plaintiff had been adjudicated disabled, this regulation would still not apply. As the Commissioner correctly points out, Reeves admittedly worked all twelve months in 2010—more than the nine months permitted by the regulation. For both of these reasons, the court finds Reeves is not entitled to a reinstatement of benefits after a trial work period as envisioned by 20 C.F.R. § 404.1592.

**VI.     Conclusion.**

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole. If the record will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. If the evidence can reasonably support either affirming or reversing the ALJ's decision, the court may not substitute its judgment for the ALJ's. *See Flaten,* 44 F.3d at 1457. It is the ALJ's responsibility to make findings of fact, drawing

1  reasonable inferences from the record as a whole, and to resolve conflicts in the evidence and
2  differences of opinion.  Having reviewed the record as a whole, and weighing the evidence that
3  supports and detracts from the Commissioner's conclusion, the court finds the ALJ's decision is
4  supported by substantial evidence, and the ALJ applied the correct legal standard in reaching his
5  decision.

6  For all of the foregoing reasons,

7  **IT IS RECOMMENDED:**

8  1. Plaintiff's Motion to Reverse/Remand (Dkt. #14) be DENIED.
9  2. The Commissioner's Cross-Motion to Affirm (Dkt. #20) be GRANTED.
10  Dated this 4th day of August, 2014.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE